**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS AUSLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-00644-JAR |
| | ) | |
| DALE GLASS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Marcus Ausler for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $26.36. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will order plaintiff to file an amended complaint on a Court form.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff attached a copy of his inmate account statement to his complaint. (Docket No. 1-2). The account statement shows an average monthly deposit of $131.81. The Court will therefore assess an initial partial filing fee of $26.36, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the St. Louis City Justice Center (CJC) in St. Louis, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, alleging the use of excessive force while he was an inmate at both the CJC and the St. Louis Medium Security Institution (MSI). His complaint names sixteen separate defendants: Commissioner Dale Glass; Superintendent Adrian Barnes; Deputy Commissioner George Hayes; Superintendent Jeffrey E. Carson; Lieutenant Javan Fowlkes; Lieutenant Archibald; Lieutenant Thomas; Officer Lester; Officer Michael Allen; Officer Randy Powell; Officer Paul Hopgood; Officer Paul Tillery; Officer Che Boatman; Officer Robinson; Lieutenant Sidney Turner; and Officer John Doe. (Docket No. 1 at 2-3, 11). Defendants Glass, Barnes, Hayes, and Carson are sued in their official capacities only, while defendants Fowlkes, Archibald, Thomas, Lester, Allen, Powell, Hopgood, Tillery, Boatman, Robinson, Turner, and Doe are sued in their individual capacities only.

As noted above, plaintiff's allegations encompass several different use-of-force incidents at two separate institutions. Plaintiff begins his "Statement of Claim" with events at the CJC. (Docket No. 1 at 11). He asserts that the first incident took place on April 2, 2020, when Officer Wilkes alerted Lieutenant Turner about inmates tampering "with their lock devices." Lieutenant Turner used the intercom to tell plaintiff to secure his door. Plaintiff responded by saying the door was secure. Lieutenant Turner, however, was under the impression that his door was blocked.

Lieutenant Turner directed that plaintiff's cell door be opened. According to plaintiff, Lieutenant Turner advised him to step to the back of his cell while asking him who had tampered with his lock device. (Docket No. 1 at 11-12). Plaintiff responded by telling her that he did not know. (Docket No. 1 at 12). Lieutenant Turner told him that he would be handcuffed, but plaintiff refused to comply. Following this refusal, plaintiff alleges that Lieutenant Turner rushed him "by [his] throat to the back of [his] cell" without giving him "a warning or command."

Plaintiff claims that Lieutenant Turner held him by his throat, choking him out. She also placed her handcuffs "on her right hand like brass knuckles and threaten[ed] to do [bodily] harm." Plaintiff struggled with Lieutenant Turner and told her that he could not breathe. In response, she threatened to spray mace into his mouth. At that point, Lieutenant Turner indeed used her mace to spray plaintiff in his "face and mouth excessively [and] nonstop."

Eventually, plaintiff was taken to solitary confinement by Lieutenant Wilburn, where he was placed in a small room "to marinate in mace." (Docket No. 1 at 12-13). Plaintiff states that he could not breathe and passed out, injuring his nose. (Docket No. 1 at 13). He also states that he hurt his back and that the mace caused his skin to peel off, but he was not given medical treatment. Plaintiff asserts that he was left in the cell for four hours and not given a shower.

The second incident plaintiff relates also took place at the CJC, this time on September 29, 2020. According to plaintiff, Lieutenant Fowlkes used mace on his "whole entire body from head to toe four times." Plaintiff contends that he did not do anything to provoke Lieutenant Fowlkes, and that Fowlkes did not give any warning, command, or directive. He states that he was then left for ten minutes to "marinate."

After ten minutes, Lieutenant Fowlkes placed plaintiff in handcuffs and leg shackles, which he complains were too tight. Lieutenant Fowlkes, along with Officers Allen, Hopgood, Boatman, Tillery, and Powell – who were members of Lieutenant Fowlkes's "Tactical Team" – escorted plaintiff to medical. Plaintiff refused a shower and medical treatment. He was then placed in restraints "in the frigid air," without his shirt on. Plaintiff states that Lieutenant Fowlkes, Officer Allen, Officer Hopgood, Officer Powell, Officer Boatman, and Officer Tillery put the restraint bands on his body so tightly that it left bruises. (Docket No. 1 at 14).

Plaintiff states that he was in the restraint chair for three-and-a-half hours, and that he was not given food, a restroom break, or the chance to stretch his legs. He further asserts that he could hardly breathe, and that a nurse did not check to see if he was properly secured. The mace on his skin left it swollen and peeling, while he also suffered "emotional stress, posttraumatic stress, and severe back pains."

The third incident at the CJC occurred on October 3, 2020, when plaintiff was put "in the restraint chair…in frigid air with nothing on." Plaintiff explains that he was placed in the chair for something that happened on the previous day, during Lieutenant Fowlkes's shift. He maintains that Lieutenant Fowlkes "left the next shift to do his dirty work." That "dirty work" consisted of several individuals – not named as defendants – placing him in a restraint chair too tightly, so that

5

his "blood circulation" was cut off. Plaintiff was in the chair for fourteen hours "with 3 restroom breaks [and] not one time to stretch [his] arms or legs." (Docket No. 1 at 14-15).

At some unspecified point, plaintiff states that Lieutenant Fowlkes, Lieutenant Hoke, and Officer Boatman "escorted [him] to [the] rec yard where it was frigid," even though he was only wearing a suicide gown and was barefoot. (Docket No. 1 at 15). Plaintiff also notes that he had bruises around his wrist, chest, and ankles, and that his back hurt for days.

The fourth incident mentioned in the complaint took place at the MSI, where plaintiff was transferred after contracting COVID-19. He states that the transfer occurred on either January 22 or January 28, 2021. (Docket No. 1 at 16). When plaintiff arrived at the MSI, he states that he was treated inhumanely, made to strip off all of his clothes, and "to walk [barefoot] down a long frigid hall." (Docket No. 1 at 15).

Once in his cell, Lieutenant Archibald approached and told him to "cuff up." When plaintiff asked why he had to be handcuffed, Lieutenant Archibald became "hostile and loud." She unlocked his chuckhole, reached inside his cell, and deployed mace. Thereafter, plaintiff states that he was "left in the cell to marinate in mace," and that he was not given medical help or offered a shower. (Docket No. 1 at 16). He further asserts that the water pressure in his cell was so low that he "could not drink or rinse…for 14 days straight."

A fifth incident occurred on February 2, 2021. This one also took place at MSI. According to plaintiff, he was walking back from an attorney visit when he was sprayed with mace by Lieutenant Thomas. When this happened, plaintiff was in "cuffs on [his] hand[s] and feet." He further asserts that Officer Lester began to mace him "constantly." Plaintiff was then placed into his "cell to marinate in mace with no medical help."

With regard to Commissioner Glass, plaintiff states that "Glass was responsible for training and supervising all officers and staff," and also "sets jail policy." Likewise, he states that Superintendent Barnes "was responsible for training and supervising all correction officers," as well as setting jail policy. As to Superintendent Carson and Deputy Commissioner Hayes, plaintiff contends that Carson and Hayes are responsible for training and supervising MSI correctional officers, and for setting jail policy. (Docket No. 1 at 17).

Plaintiff states that the aforementioned incidents constitute excessive uses of force that were not "rationally related to a legitimate governmental purpose." He seeks compensatory damages as deemed "just and appropriate" by the Court.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging excessive force while he was a pretrial detainee at the CJC and MSI. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will direct plaintiff to file an amended complaint.

### A. Deficiencies in Complaint

Plaintiff's complaint is deficient for three separate reasons. First, as to the official capacity claims against defendants Glass, Barnes, Hayes, and Carson, plaintiff has presented no facts to support the proposition that the City of St. Louis is liable to him due to an unconstitutional policy, custom, or failure to train. Instead of providing supporting factual allegations, plaintiff merely recites the cause of action, which is insufficient. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, "[a] pleading that merely pleads labels and

conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

Second, plaintiff treats several of the defendants – especially Officers Allen, Powell, Hopgood, Tillery, Boatman, and Robinson – as an undifferentiated group, rather than make specific allegations about what each individual actually did or failed to do to harm him. This is not sufficient to state a 42 U.S.C. § 1983 claim, as individuals "are personally liable only for their own misconduct." *See S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).

Finally, plaintiff's complaint advances numerous claims against multiple defendants occurring at two separate institutions. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . .  may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  While joinder of claims, parties, and remedies are encouraged under the Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases. *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). In particular, there are two specific requisites for joinder, including the requirement that the asserted right to relief against each defendant must arise out of the same transaction or occurrence. *Id*. As such, a plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences.  In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In this case, plaintiff appears to be attempting to bring five separate use-of-force claims involving the deployment of mace against him. Of the five separate incidents described in the complaint, only two of them involve the same defendants. More precisely, Lieutenant Fowlkes and Officer Boatman were allegedly involved in the second and third incidents, occurring on September 29, 2020 and October 3, 2020, respectively. The other three incidents involved entirely separate defendants. Furthermore, three of the incidents occurred at the CJC, while two took place at the MSI. Other than the fact that mace was used, plaintiff has not demonstrated that these incidents, occurring over the course of ten months at two separate jails, constitute a single transaction or occurrence.

Despite the deficiencies in plaintiff's complaint, the Court will not dismiss it at this time. Instead, because plaintiff is a self-represented litigant, and because he has raised serious allegations, he will be allowed to file an amended complaint according to the instructions set forth below. **These instructions must be followed**.

## B. Amendment Instructions

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible. In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should fill out the complaint form in its entirety, and ensure that it is signed.

9

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

**The amended complaint should only include claims that arise out of the same transaction or occurrence.** In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). As noted above, plaintiff complains about five separate incidents occurring over a ten month period involving sixteen different defendants and two separate institutions. This is not permitted, and the Court will not allow plaintiff to simply bring every claim he has in a single lawsuit, without showing that the right to relief asserted against defendants arise out of the same transaction or occurrence. Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link

to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8ᵗʰ Cir. 2017).

The Court notes that in his original complaint, plaintiff mentioned several defendants without specifying their exact roles. If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8ᵗʰ Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8ᵗʰ Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. **If plaintiff fails to file an amended complaint on a Court-provided**

form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

**C. Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. As discussed above, plaintiff is being ordered to file an amended complaint. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $26.36 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison

registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form in accordance with the instructions set forth above within **thirty (30) days** of the date of this order.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court-provided form in accordance with the instructions set forth above within **thirty (30) days** of the date of this order, the Court will dismiss this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon the filing of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 29th day of October, 2021.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE