**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARCUS AUSLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:21-cv-00644-JAR |
| | ) |
| DALE GLASS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on review of plaintiff Marcus Ausler's second amended complaint pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Court will dismiss the claim against the City of St. Louis Justice Center. However, the Court will direct the Clerk of Court to issue process on defendants Javan Fowlkes, Paul Hopgood, Randy Powell, and Che Boatman in their individual capacities as to plaintiff's claim of excessive force.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the St. Louis City Justice Center in St. Louis, Missouri. On June 7, 2021, he filed a civil action pursuant to 42 U.S.C. § 1983, alleging the use of excessive force while he was an inmate at both the Justice Center and the St. Louis Medium Security Institution. (Docket No. 1). His complaint named sixteen separate defendants: Commissioner Dale Glass; Superintendent Adrian Barnes; Deputy Commissioner George Hayes; Superintendent Jeffrey E. Carson; Lieutenant Javan Fowlkes;

2

Lieutenant Archibald; Lieutenant Thomas; Officer Lester; Officer Michael Allen; Officer Randy Powell; Officer Paul Hopgood; Officer Paul Tillery; Officer Che Boatman; Officer Robinson; Lieutenant Sidney Turner; and Officer John Doe. In the complaint, plaintiff presented allegations regarding five separate incidents of excessive force spread across two different institutions.

Along with his complaint, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 2). On October 29, 2021, the Court granted the motion and assessed an initial partial filing fee. (Docket No. 5). Because he was proceeding in forma pauperis, the Court reviewed plaintiff's complaint under 28 U.S.C. § 1915. Based on that review, the Court determined that the complaint was deficient. In particular, the Court explained that plaintiff had not presented any facts to support his official capacity claims, that he had failed to make specific allegations against many of the defendants in their individual capacities, and that he had impermissibly joined claims arising out of different transactions or occurrences.

Rather than dismissing the complaint, the Court ordered plaintiff to submit an amended complaint within thirty days. To aid him, he was given detailed instructions on how to properly amend. Plaintiff filed his amended complaint on November 24, 2021. (Docket No. 6).

Once again, the amended complaint named sixteen separate defendants: (1) Commissioner Dale Glass; (2) Superintendent Adrian Barnes; (3) Deputy Commissioner George Hayes; (4) Medium Security Institution Superintendent Jeffrey Carson; (5) Lieutenant Sidney Turner; (6) Lieutenant Javan Fowlkes; (7) Correctional Officer Michael Allen; (8) Correctional Officer Paul Hopgood; (9) Correctional Officer Che Boatman; (10) Correctional Officer Paul Tillery; (11) Correctional Officer Randy Powell; (12) Correctional Officer Jamal Robinson; (13) Correctional Officer Kenneth Williams; (14) Lieutenant Brandy Archibald; (15) Lieutenant Thomas; and (16) Correctional Officer Marco Lester. Defendants were all sued in both their individual and official

3

capacities. As in the original complaint, plaintiff's allegations concerned five separate instances of excessive force occurring in at least two different correctional facilities.

As before, the Court reviewed the amended complaint under 28 U.S.C. § 1915. (Docket No. 7). As before, the Court determined that the amended complaint was subject to dismissal. In particular, the Court determined that plaintiff had failed to state official capacity claims, because he had not demonstrated the liability of the City of St. Louis; that he had failed to state individual capacity claims, because he had not made specific allegations against each defendant; and that he had improperly joined unrelated claims. Instead of dismissing the amended complaint, plaintiff was directed to file a second amended complaint on March 28, 2022.

Plaintiff submitted a second amended complaint on April 15, 2022. (Docket No. 8). The filing of the second amended complaint supercedes all prior complaints, and renders them without effect. Therefore, the Court will treat the second amended complaint as the operative pleading. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

**The Second Amended Complaint**

Plaintiff brings his second amended complaint pursuant to 42 U.S.C. § 1983. It is handwritten on a Court-provided form, and names five separate defendants: (1) the City of St. Louis Justice Center; (2) Lieutenant Javan Fowlkes; (3) Correctional Officer Paul Hopgood; (4) Correctional Officer Randy Powell; and (5) Correctional Officer Che Boatman. Defendants are sued in their individual capacities only. (Docket No. 8 at 2-3). The second amended complaint alleges that defendants used excessive force while plaintiff was a pretrial detainee at the Justice Center.

4

In the "Statement of Claim," plaintiff asserts that on September 29, 2020, he was in solitary confinement at the Justice Center, and that he was locked "inside [the] cell posing no threat." (Docket No. 8 at 3). Nevertheless, he alleges that at 3:45, Lieutenant Fowlkes came to his cell and deployed mace against him, spraying his "whole person 4 times. " Afterwards, Fowlkes "left [him] to marinate in mace for 10 minutes."

Following this incident, plaintiff states that he was escorted to medical, but refused a "shower [and] treatment for fear of getting mace[d] by" Lieutenant Fowlkes. (Docket No. 8 at 13). Pursuant to Fowlkes's orders, he was put into the restraint chair while shirtless in "freezing cold" temperatures. (Docket No. 8 at 3, 13).

According to plaintiff, Officer Hopgood put him into the restraint chair and "tied the left restraint band on [his] left [wrist] so tight it lost circulation in that hand." (Docket No. 8 at 3). Hopgood then "tied the waist restraint band around [his] midsection so tight that [he] could not breath[e]." Meanwhile, Officer Powell assisted by tying "the right [wrist] restraint band so tight" that plaintiff "lost circulation in [his] hand." (Docket No. 8 at 4). Powell also "tied the leg shackles on [his] ankles so tight that both feet became numb and lost circulation." Plaintiff asserts that Officer Boatman aided Officers Hopgood and Powell "by constantly jerking the restraints on both [wrists] to make sure [he] couldn't move." Boatman also chained "the restraint chair to the rail in [the] 5B sallyport," so that every time the door slammed it caused the restraints to vibrate, and that every time plaintiff moved the restraints got tighter. Plaintiff claims that Lieutenant Fowlkes ordered him to remain in the restraint chair for three-and-a-half hours.

Due to his time in the restraint chair, plaintiff alleges that he suffers from "emotional distress, right hand damage, severe back pains, and" damage to both of his feet. (Docket No. 8 at 5). He is seeking damages in the amount of $250,000. (Docket No. 8 at 6).

**Discussion**

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing defendants of excessive force against him while he was a pretrial detainee. Because he is proceeding in forma pauperis, the Court has reviewed his second amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the claim against the City of St. Louis Justice Center. However, the Court will direct the Clerk of Court to issue process on defendants Fowlkes, Hopgood, Powell, and Boatman in their individual capacities as to plaintiff's claim of excessive force.

### A. Claim Against City of St. Louis Justice Center

Plaintiff has named the City of St. Louis Justice Center as a defendant in this action. The Justice Center, however, is a subdivision of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Therefore, this claim must be dismissed.

Even if the Court were to substitute the City of St. Louis as defendant, plaintiff has still failed to state a municipal liability claim. A local governing body such as St. Louis can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th

6

Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

7

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented facts directly alleging or supporting the proposition that the City of St. Louis harmed him due to an unconstitutional policy, custom, or failure to train.

First, with regard to policy, plaintiff has not asserted any facts indicating that "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [City of

8

St. Louis's] governing body" is at issue in this case. Certainly, he does not allege that defendants used excessive force against him on September 29, 2020 due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Instead, plaintiff's second amended complaint focuses on the actions of individual correctional officers. Aside from the lack of direct allegations, the Court cannot infer the existence of an unconstitutional policy or custom based on a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, as to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" City of St. Louis employees, much less that city policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of a "persistent pattern," plaintiff's second amended complaint asserts only a single instance of excessive force on September 29, 2020. As noted above, the Court cannot infer the existence of an unconstitutional custom based on one incident.

Third, and similarly, plaintiff has not demonstrated that the City of St. Louis was deliberately indifferent in failing to train or supervise its employees. That is, plaintiff has not shown that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is typically provided by allegations indicating a "pattern of similar constitutional violations by untrained employees." As already discussed, plaintiff's facts do not describe a pattern, but are instead focused on a single instance of excessive force.

Finally, to the extent that plaintiff seeks to hold the City of St. Louis liable for the actions of its employees, the Court notes that a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

9

For all these reasons, plaintiff has failed to state a claim against the City of St. Louis. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, even if St. Louis itself is substituted as defendant for the City of St. Louis Justice Center, the claim is subject to dismissal.

### B. Individual Capacity Claims

Plaintiff has sued Lieutenant Fowlkes, Officer Hopgood, Officer Powell, and Officer Boatman in their individual capacities, accusing them of excessive force. Because plaintiff is a pretrial detainee, his claims are analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) ("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees").

The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Under the Fourteenth Amendment, there are two ways to determine whether conditions rise to the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id.* Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.*

10

To that end, the Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). *See also Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8ᵗʰ Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8ᵗʰ Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8ᵗʰ Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

With regard to the use of mace, the Court notes that in the Eighth Amendment context, the use of mace is not a per se violation of the prohibition on excessive force. *See Jones v. Shields*, 207 F.3d 491, 496 (8ᵗʰ Cir. 2000) (explaining that "a limited application of [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force"). However, the use of pepper spray may constitute excessive force based on allegations that its deployment "involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary super-soaker quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force." *Burns v. Eaton*, 752 F.3d 1136, 1140 (8ᵗʰ Cir. 2014) (citing *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8ᵗʰ Cir. 2008). Of course, because plaintiff is a pretrial detainee, the ultimate question is whether the use of mace amounted to punishment. *See Kingsley*, 135 S.Ct. at 2473.

11

As to plaintiff's allegations regarding the use of a restraint chair, the Court looks to various factors in determining whether the chair's use amounted to punishment. These factors include "the pretrial detainee's conduct prior to confinement, the duration of the confinement, whether the pretrial detainee was monitored at regular intervals while in the restraint chair, whether the pretrial detainee was given regular breaks from confinement to the restraint chair, how the pretrial detainee responded when the officials offered to release the pretrial detainee from the restraint chair, and whether the pretrial detainee was injured or suffered pain as a result of confinement to the restraint chair." *Undlin v. City of Minneapolis*, 2009 WL 3754208, at \*5 (D. Minn. 2009).

In this case, plaintiff states that Lieutenant Fowlkes deployed mace against him when he was inside his cell and "posing no threat." Furthermore, he asserts that Fowlkes did not simply spray him once, but four times. Afterwards, plaintiff was removed from his cell and escorted to medical by officers, where he refused a shower. There is no indication that he was being aggressive, threatening, or noncompliant at this time. Pursuant to Lieutenant Fowlkes's orders, plaintiff was placed in a restraint chair by Officers Hopgood, Powell, and Boatman, with the restraints tightened to such an extent that it caused pain, difficulty breathing, and caused him to lose circulation in his hands and feet. Plaintiff insinuates that these officers intentionally tightened the restraints to cause him discomfort. He was then left in the chair without a shirt in "frigid cold" for three-and-a-half hours, and alleges that his time in the chair caused him injuries.

The Court must accept these allegations as true, and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Furthermore, in evaluating plaintiff's second amended complaint, the Court notes that "a pro se complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers. *See Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). Bearing this in mind,

12

the Court has determined that plaintiff has presented sufficient facts regarding excessive force for the purposes of initial review under 28 U.S.C. § 1915. Therefore, the Court will direct the Clerk of Court to issue process on defendants Fowlkes, Hopgood, Powell, and Boatman in their individual capacities as to plaintiff's claim of excessive force.

The Court cautions plaintiff that this is only a preliminary determination based solely on the allegations contained in the second amended complaint. This is not a determination of the merits of his claim or potential defenses thereto.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's claim against the City of St. Louis Justice Center is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Javan Fowlkes, Paul Hopgood, Randy Powell, and Che Boatman in their individual capacities as to plaintiff's claim of excessive force. Defendants shall be served in accordance with the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 26th day of _____April_____, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

13