UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARCUS AUSLER,                          )
                                        )
                    Plaintiff,          )
                                        )
             v.                         )        Case No. 4:21CV644 JAR
                                        )
PAUL HOPGOOD, *et al.,*                 )
                                        )
                    Defendants.         )

## MEMORANDUM AND ORDER

Plaintiff Marcus Ausler, proceeding *pro se*, brings this action pursuant to 42 U.S.C.

§ 1983 against four correctional officers in their individual capacities, namely Javan Fowlkes,

Paul Hopgood, Randy Powell, and Che Boatman (collectively, "Defendants"). Plaintiff's claim

arises from alleged incidents of excessive force that occurred on September 29, 2020 while

Plaintiff was a pretrial detainee in the custody of the St. Louis City Justice Center ("CJC").

Both Plaintiff and Defendants have moved for summary judgment on Plaintiff's claims.

Responses in oppositions by each side to the respective motions have been filed. Local Rule

4.01(E) requires that "[e]very memorandum in support of a motion for summary judgment must

be accompanied by a document titled Statement of Uncontroverted Material Facts…" Plaintiff

did not attach a Statement of Uncontroverted Material Facts to his Motion as required.

Defendants attached a Statement of Uncontroverted Material Facts [ECF No. 33] to their Motion,

which Plaintiff responded to in the form of questions. Defendants objected to Plaintiff's

questions as he did not comply with Local Rule 4.01(E). Defendants also attached exhibits,

including affidavits and portions of Plaintiff's deposition testimony, to their memoranda.

"All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. Loc. R. 4.01(E). Because Plaintiff did not respond to Defendants' Statement of Uncontroverted Material Facts in accordance with Local Rule 4.01(E), they are deemed admitted. *Turner v. Shinseki*, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing *Deichmann v. Boeing Co*., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd,* 232 F.3d 907 (8th Cir. 2000), *cert. denied,* 531 U.S. 877)). The Court may liberally construe Plaintiff's allegations, but his pro se status does not excuse him from responding to Defendants' motion "with specific factual support for his claims to avoid summary judgment*," Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with Local Rule 4.01(E). *See Peterson v. Corr. Med. Servs*., 2012 WL 4108908, at *1 (E.D. Mo. Sept. 18, 2012).

## Facts

In 2020, Plaintiff was a pretrial detainee in the custody of the CJC. On September 29, 2020, Defendants worked as correctional officers at the CJC.

On September 29, 2020, Plaintiff threw bottles filled with a liquid out of the broken food slot from his cell. One of the bottles thrown by Plaintiff struck Defendant Fowlkes. Defendant Fowlkes assembled Defendants Hopgood, Powell, and Boatman to assist him with investigating and stopping more bottles being thrown from Plaintiff's cell. At this time, Defendants were all aware of Plaintiff's history of aggressive behavior, which included an incident a few months prior when Plaintiff stabbed another detainee.

Once Defendants assembled, they approached Plaintiff's cell. Plaintiff had covered his upper body with a commissary bag and wrapped his face in towels. Defendant Fowlkes saw that Plaintiff had a metallic object in his waistband, which he believed was a weapon.

Before entering his cell, Defendant Fowlkes directed Plaintiff several times to voluntarily present his hands to be handcuffed for safety purposes, but Plaintiff assumed a fighting stance and acted aggressively. Defendant Fowlkes then deployed pepper spray into Plaintiff's cell through the food port. After the pepper spray started to take effect, Plaintiff continued to display aggressive behavior. Defendants placed Plaintiff in a restraint chair as a safety precaution due to his aggressive behavior. A search of Plaintiff revealed a sharpened metal weapon, which was seized and placed in a contraband locker.

Plaintiff was then taken to the Medical Unit in the restraint chair. A CJC nurse attempted to provide Plaintiff with medical treatment, but Plaintiff refused treatment. Plaintiff also refused to shower. After refusing medical treatment and a shower, Plaintiff was escorted back to his assigned section of the CJC in the restraint chair. A nurse with the medical unit checked on the Plaintiff while he remained in the restraint chair. Plaintiff eventually calmed down, and he was released from the restraint chair.

To the extent the Court liberally construes Plaintiff's statements in his filings as factual allegations, they are either conclusory or do not create a genuine issue of material fact. For instance, Plaintiff asserts "evidence on record shows" that it was a "bottle of water" that he threw, but he does not deny or controvert throwing it or causing a disturbance. Plaintiff does not dispute his possession of a weapon, but instead asks in his response if the weapon was found or if Defendants took a picture of it. Plaintiff attempts to argue there is a genuine dispute of a material fact because he eventually complied with directives to present his hands for restraints after the pepper spray started to take effect, but Defendants admit that Plaintiff eventually presented his hands. Plaintiff offers conclusory statements that excessive force was utilized against him and Defendants acted maliciously and sadistically to cause him harm, but fails to

3

provide any factual or evidentiary support for these allegations. Even with an application of a "plaintiff-friendly" version of the facts, Plaintiff still does not create a factual dispute to defeat summary judgment.

**Legal Standards**

Summary Judgment

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

The "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003)

(quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). "Simply

referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a

genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 536 F.3d 813, 818 (8th

Cir. 2008). "The mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient; there must be evidence on which the jury could reasonably find for

the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630,

638 (8th Cir. 2005).

Where parties file cross-motions for summary judgment, the legal standard does not

change. Each motion must be evaluated independently to determine whether a genuine issue of

material fact exists and whether the movant is entitled to judgment as a matter of law. *Jaudes v.*

*Progressive Preferred Ins. Co.,* 11 F. Supp.3d 943, 947 (E.D. Mo. 2014).

Excessive Force

Because Plaintiff was a pretrial detainee at the time of the alleged incident, his claim falls

under the Fourteenth Amendment. *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010)

("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the

Fourteenth Amendment imposes analogous duties on jailers to care for detainees"). The Due

Process Clause protects pretrial detainees from the use of excessive force amounting to

punishment. *Kingsley v. Hendrickson*, 135 U.S. 2466, 2473 (2015). Analysis of excessive force

claims under the Due Process Clause focuses on whether the defendant's purpose in using force

was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir.

2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as

great as the Eighth Amendment protections available to a convicted prisoner." *Walton v.*

*Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater

protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *See also, Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically."). "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of the individual case or the particular prison setting." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (internal quotation marks and quoted cases omitted). Factors to be considered in deciding whether a particular use of force was reasonable include "the objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers," and "the extent of the inmate's injury." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In considering an excessive use of force claim, the Court weighs the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants '[would] support a reliable inference' of an unnecessary and wanton infliction of pain." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr.*, 12 F.3d 133, 136-37 (8th Cir. 1993)). In weighing these factors, however, the Court is required to "avoid[] the improper resolution of credibility issues," which are assessments for the trier of fact and not for summary judgment. *Id*. (quoting *Johnson*, 12 F.3d at 137).

Qualified Immunity

Qualified immunity "shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Ivey v. Audrain Cnty.,* 968 F.3d 845, 848 (8th Cir. 2020) (quoting *Thiel v. Korte*, 954 F.3d 1125, 1128 (8th Cir. 2020)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008).

The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The relevant question is whether a reasonable officer would have fair warning that his conduct was unlawful. *Brown*, 574 F.3d at 499; *See also, Buckley v. Ray*, 848 F.3d 855, 863 (8th Cir. 2017); *Blazek v. City of Iowa City*, 761 F.3d 920, 922-23 (8th Cir. 2014).

The Court may address the questions in either order, but a § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If either question is answered in the negative, the public official is entitled to qualified immunity."

*Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). Thus, to avoid summary judgment, Plaintiff must produce sufficient evidence to create a genuine issue of fact as to whether the Defendants violated a clearly established constitutional right. *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017).

**Discussion**

Plaintiff brings a § 1983 claim for excessive force against each Defendant in his individual capacity. Plaintiff alleges Defendant Fowlkes used excessive force for spraying pepper spray into his cell. Plaintiff also alleges excessive force against all Defendants for their use of the restraint chair.

<u>Defendant Fowlkes's Use of Pepper Spray</u>

Defendant Fowlkes moves for summary judgment on the grounds that the amount of force used in the incident was objectively reasonable under all the attendant circumstances and that he is entitled to qualified immunity. Fowlkes also argues that Plaintiff posed a security threat through his combative behavior. Plaintiff contends in his Motion and his response to Defendants' Motion that he posed no threat because he was alone in solitary confinement, and he complied with Defendant Fowlkes's orders. However, the undisputed facts show otherwise.

Plaintiff does not dispute that he was throwing a bottle with liquid from his cell and possessed a sharpened metal object during the incident, which was later seized after a search of Plaintiff. It is also undisputed that when Defendants approached Plaintiff's cell, Plaintiff had covered his upper body with commissary bags and wrapped his face in towels. When Defendant Fowlkes directed Plaintiff several times to voluntarily present his hands to be handcuffed for safety purposes, Plaintiff assumed a fighting stance. Defendant Fowlkes then deployed pepper spray into Plaintiff's cell through the food port. After the pepper spray started to take effect,

8

Plaintiff continued to display aggressive behavior. Defendants placed Plaintiff in a restraint chair for safety reasons pertaining to Plaintiff's continued aggressive behavior. Plaintiff was then taken to the Medical Unit in the restraint chair, where he refused medical attention and a shower.

During Plaintiff's deposition, he acknowledged that he was aware that if something was thrown from his cell, he would be extracted from his cell, and if he refused to comply, he would be sprayed with pepper spray [ECF No. 33-6 at 36]. Even so, Plaintiff threw a bottle from his cell, refused to voluntarily present his hands, and assumed a fighting pose. Defendant Fowlkes clearly faced an uncooperative inmate. Further, with the presence of a sharpened metal object, Defendant Fowlkes could not simply leave Plaintiff with what he believed to be a weapon in his cell. To maintain order, Fowlkes deployed pepper spray into the Plaintiff's cell. Thus, Plaintiff's contention that he posed no threat because he was alone in solitary confinement ignores the circumstances and reality of what was required "to maintain or restore discipline" in this situation.

In *Jones v. Shields*, the Eighth Circuit noted that "a limited application of capstun [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force," citing numerous cases in which "our sister circuits have approved the use of mace in small quantities to control a recalcitrant inmate." 207 F.3d 491, 496 (8th Cir. 2000) (internal quotations omitted). The Eighth Circuit concluded that the plaintiff failed to establish "malicious or sadistic" conduct when the defendant sprayed pepper spray in the face of a large inmate who refused a work order and objected profanely when ordered to return to his barracks. *Id*. at 497. By contrast, the few cases where the Eighth Circuit affirmed the denial of summary judgment in Eighth Amendment excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than

inflicting pain, use of unnecessary "super-soaker" quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force. *See Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats*, 308 F.3d at 873; *Lawrence v. Bowersox*, 297 F.3d 727, 730 (8th Cir. 2002).

There is also no evidence in this case of a malicious motive to harm Plaintiff by Defendant Fowlkes, or that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive. Considering the circumstances here, the Court finds that Defendant Fowlkes' did not use excessive force when he deployed pepper spray into Plaintiff's cell. *See Burns v. Eaton,* 752 F.3d 1136, 1138-40 (8th Cir. 2014) (finding Defendant did not use excessive force in violation of the Eighth Amendment when he deployed pepper spray after Plaintiff was combative, refused orders to leave a locked shower cell and threw a shampoo bottle at him).

Defendant Fowlkes further argues he is entitled to qualified immunity from the § 1983 excessive force claim because his conduct did not violate a clearly established constitutional or statutory right. Under the second prong of the qualified immunity inquiry, Plaintiff has failed to establish any violation of his clearly established constitutional rights. Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Plaintiff has the burden to show that his right was clearly established at the time of the violation. *Kuessner v. Wooten*, 987 F.3d 752, 755 (8th Cir. 2021). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc). This means "[t]here must be precedent, controlling authority, or a robust

consensus of cases of persuasive authority." *Id*. (internal quotations omitted). Existing precedent must place the question "beyond debate." *Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020). The Court "look[s] to existing precedent that involves sufficiently 'similar facts' and that 'squarely governs' the specific facts at issue." *Id*. (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). There may also be the "rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Quraishi v. St. Charles Cty., Mo.*, 986 F.3d 831, 835 (8th Cir. 2021).

As Defendants argued in their response, Plaintiff has failed to identify a specific case that would put Defendant Fowlkes on notice that his conduct was unlawful in these circumstances when Plaintiff was causing disruptions, possessed a weapon, and assumed a fighting stance after disregarding Defendant Fowlkes directives. Indeed, no case is available since Defendant Fowlkes's actions were reasonable under all of the facts known to him. Consequently, the Court finds Defendant Fowlkes is entitled to qualified immunity on Plaintiff's use of excessive force claim for spraying pepper spray into his cell and will grant summary judgment in Defendant Fowlkes's favor on this claim.

Defendants' Use of Restraints

Defendants move for summary judgment as to Plaintiff's excessive force claim pertaining to their use of a restraint chair. Each Defendant argues that their actions were objectively reasonable and that they are entitled to qualified immunity because their actions did not violate a clearly established constitutional or statutory right. Plaintiff argues Defendants used excessive force when he was in the restraint chair because his restraints were too tight, and he was left in the "frigid cold" for three hours. In his deposition, Plaintiff clarified that being left in the "frigid cold" was a reference to it being cold in the CJC all year-round [ECF No. 33-6 at 19].

11

The Eighth Circuit has concluded that "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy." *Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993). Promoting prison security is "perhaps the most legitimate of penological goals." *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003). "[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6 (quotation and alteration omitted).

In this case, Plaintiff was still acting aggressively when Defendant Fowlkes sprayed pepper spray into his cell, so Defendants placed Plaintiff in a restraint chair due to his behavior and for safety precautions. Plaintiff was then taken to the Medical Unit for medical treatment and a shower, which he refused. After his refusal, Plaintiff was escorted back to his assigned section of the CJC in the restraint chair. A nurse with the medical unit continually checked on Plaintiff and the restraints while he remained in the restraint chair. Plaintiff eventually calmed down, and he was released from the restraint chair. It is clear from the undisputed factual record that Plaintiff was acting aggressively before and after the pepper spray took effect. It was Plaintiff's own behavior that kept him in the restraint chair for a longer period. Once Plaintiff was compliant and calmed down, he was released from the restraint chair. Defendants' discretion to use restraints on Plaintiff's was necessary to maintain security within the CJC. The undisputed facts do not suggest, nor is there is any evidence produced by Plaintiff, that Defendants' actions reflected a malicious and sadistic motive. *See Burns*, 752 F.3d at 1139; *See also, Jackson,* 866 F.3d at 977 (finding prison lieutenant did not violate a state inmate's Eighth Amendment right to be free from cruel and unusual punishment by using excessive force in placing inmate on a

restraint board and leaving him there for up to four hours). Considering these circumstances, the Court finds that the Defendants' use of force was not excessive.

Defendants further argue they are entitled to qualified immunity from the § 1983 excessive force claim because their conduct did not violate a clearly established constitutional or statutory right.  In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The law must be so "particularized to the facts of the case," *White v. Pauly*, 137 U.S. 548, 552 (2017), as to have "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Plaintiff must show that a clearly established right was violated by Defendants' prolonged use of the restraint chair. Plaintiff does not cite to any precedent that use of a restraint chair, even for a prolonged period or placement of restraints too tightly, are constitutional violations or that they violate any clearly established right. There is no Eight Circuit case, nor could the Court locate any case finding that a jail's use of a restraint chair in similar circumstances was unconstitutional. The use of the restraint chair in this case was reasonable given that Plaintiff was being disruptive and combative, and Defendants needed a way to calm Plaintiff down and transport him safely to the medical unit. Plaintiff's arguments are further undermined by his refusal to accept medical treatment and a shower, and the CJC nurse continually checking on him while he was in the restraint chair.

Without any precedent, the Court cannot find Plaintiff's right is clearly established as this is not the "rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Quraishi*, 986 F.3d at 835. The Court finds Defendants are entitled to qualified immunity on Plaintiff's use of

excessive force claim. The Court will grant summary judgment in Defendants' favor on this claim.

## Conclusion

For the reasons set forth above, Defendants, namely Javan Fowlkes, Paul Hopgood, Randy Powell, and Che Boatman, are entitled to summary judgment on Plaintiff's excessive force claims. The Court further considered Plaintiff's Motion for Summary Judgment and will deny Plaintiff's Motion for the reasons set forth above.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 31] is **GRANTED**.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [ECF No. 28] is **DENIED**.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 1st day of August, 2023.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**